## JOHN MAXWELL

*v.*

## CORNELIUS HANNON and others.

On the ground of fraud, the complainant replevied certain goods on which a sheriff had levied by virtue of a judgment and execution obtained by one of the defendants, a father, against another, his son. On the trial the complainant could not prove the fraud, and judgment was entered against him and his sureties on the replevin bond. The complainant afterwards discovered other evidence of the fraud, and, in trover for the same goods, recovered a judgment. The son has absconded.—*Held*, that equity will relieve the complainant by cancelling the judgment in replevin against him.

Bill for relief. On bill and general demurrer.

*Mr. F. W. Leonard,* for the demurrer.

*Mr. F. Frelinghuysen,* for complainant.

THE CHANCELLOR:

The bill is filed for relief against a judgment at law recovered against the complainant and his sureties, upon a replevin bond. The complainant, who is not a resident of this state, had no notice of the suit in which the judgment was recovered. The sureties, who are residents of this state, were served with process therein. The plaintiff in that suit (the sheriff of the county of Essex) was about causing to be executed therein a writ of inquiry to assess damages, when the complainant first learned of the existence of the suit. He thereupon applied to this court for an injunction (which was granted) to restrain the sheriff from further proceeding in the action.

The goods which were replevied in the suit in which the bond was given, were, at the time of the replevin, in the sheriff's hands, under a levy which he had made on them

under an execution issued on a judgment in favor of the defendant Cornelius Hannon, and against the defendant Cornelius Hannon, Jr., his son. The sheriff had levied on the goods as the property of Cornelius Hannon, Jr. The latter had bought them from the complainant, but had not paid for them. It appears from the statements of the bill that the Hannons had been, before the purchase of the goods from the complainant, partners in business, as dealers in coal and stone, under the firm of C. Hannon & Son; that the partnership was, on or about the 15th of December, 1875, dissolved by mutual consent, the son succeeding the father in the business, and agreeing to pay him, for his interest in the assets above the debts, the sum of $11,750, for which he then gave him his promissory note; that the complainant subsequently sold to Cornelius Hannon, Jr., goods (stone) at the following times, to the following amounts: September 19th, 1876, $1,344.93; September 27th, $544.06; on the 14th of October in that year, $787.76; on the 17th of the last-mentioned month, $1,439.60; in all, $4,116.35—all bought on credit, and for which the purchaser paid nothing; that on the 14th of October, 1876, on which day the son bought a bill of stone from the complainant to the amount of $787.76, the father began a suit against the son on the note of $11,750, and recovered judgment on it for the sum of $12,225.53, besides costs, and, on the 18th of November following, execution thereon was delivered to the sheriff, who, under it, levied on the goods bought by the son from the complainant, with all the rest of the son's stock in trade; and that, on the 14th of October, 1875, the son executed a chattel mortgage to the father, to secure the payment of $3,000 on demand, on all the son's property except the stock in trade on hand, by virtue of which the father disposed of all the mortgaged property. It further appears by the bill, that the son was an unmarried man and lived with his father.

The complainant, expecting to be able to prove that his goods had been obtained from him through a conspiracy on

Maxwell v. Hannon.

the part of the Hannons fraudulently to obtain them from him in order that they might be taken under the execution for the purpose of cheating him out of his property, and that the judgment and execution were mere fraudulent devices to that end, replevied the goods accordingly. The replevin suit was tried, and resulted in a verdict and judgment against the complainant. The goods had been delivered to the complainant under the writ, and were not retaken on bond by the sheriff, and they have not been returned by the complainant.

Soon after bringing the replevin suit, the complainant brought an action of trover for the same goods, against the son, based on the same allegation of fraud on which the replevin suit was brought. In the suit in trover, the complainant was successful, but the defendant therein, immediately after the verdict, left this state and the country, or secreted himself, and the complainant has not been able to obtain satisfaction of his judgment, or to realize anything thereon. In the trover suit he proved the alleged fraud. The Hannons were both sworn in the replevin suit, and testified to the *bona fides* of the transactions in question, and the existence of the debts for which the note and chattel mortgage were respectively given. In the trover suit the complainant was, according to the bill, able to show the falsity of their testimony given on the trial in the replevin suit. It appears, therefore, that one of the alleged conspirators will, unless relief be granted in this court, be enabled, by means of the suit on the replevin bond, to reap the fruits of the fraud, and the complainant, although he has, in the trover suit, which was, as before stated, brought in reference to the same goods and on the same grounds as the replevin suit, demonstrated the fraud and has a judgment against the son therein, will have no advantage from his success.

It appears, by the statements of the bill, that, at the trial in the replevin suit, the Hannons testified to the correctness of the schedule which was annexed to the articles of disso-

lution of the firm of C. Hannon & Son, and of the amount
of debts and value of assets of that firm at the time of dis-
solution, therein stated, by which they proved that the note
for $11,750 before mentioned, given by the son to the
father, on the dissolution, for the interest of the former in
the concern, and on which the former recovered the before-
mentioned judgment against the latter, was given for a full
and honest consideration. It also appears by the bill, that
the complainant was unable to show the falsity of that testi-
mony until the time of the trial of the trover suit, when he
was able to prove, and did prove, that the testimony was
untrue, and that the note was without consideration, and
that the statement of amounts and values of assets in the
schedule was a grossly exaggerated statement, evidently
made for the purpose of furnishing an apparent foundation
for the claim of the father upon the son to the amount of
the note.

The bill further states that, on the trial in the replevin
suit, the son testified that the cause of his embarrassment
was loss to the amount of $7,000, sustained by him by cer-
tain endorsements and loans to a person whom he desig-
nated. The complainant, according to the bill, was unable
to disprove this until the time of the trial in the trover suit,
when he was able to prove, and did prove, that the amount
of that loss did not exceed $1,300.

If the judgment in replevin in favor of the father was
obtained by the false swearing of himself and his son in
pursuance of a conspiracy between them to cheat the com-
plainant, and the latter was unable, at the time of the trial
or afterwards until it was too late to avail himself of the
proof at law, to obtain evidence to overthrow their testi-
mony, and he has since obtained such evidence, he ought to
have the advantage of it here. And he should have it the
more especially because, in the subsequent suit between
him and the son, in reference to precisely the same subject
matter, he was, by means of that new proof, enabled to
meet and overthrow their testimony, and obtain a verdict

and judgment in his favor.    One of the most important
uses of this court is to reach and foil combinations and con-
federacies to defraud.

The demurrer will be overruled, with costs.